UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARE U. ANAGONYE,

                Plaintiff,

v.

TRANSFORM AUTOMOTIVE, LLC,

                Defendant.

_____/

Case No. 21-11174

George Caram Steeh
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 59)

In this case, plaintiff Clare U. Anagonye ("Anagonye") brings claims for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, against her former employer, Transform Automotive, LLC ("Transform").[1] In short, Anagonye claims that she complained to Transform that she had been subjected to "bullying" and "sexual harassment," but that instead of investigating *her* complaints, Transform only investigated complaints about *Anagonye's* sexual harassment in the workplace. Transform's investigation corroborated the complaints made against Anagonye, and she was terminated. This lawsuit followed.

After the parties completed an extensive period of discovery, Transform moved for summary judgment, arguing that Anagonye cannot make out a *prima facie* case of

---

[1] Anagonye had initially also named as a defendant Jill Young ("Young"), Transform's Human Resource Manager who (along with Interim Production Manager Igor Ristoski ("Ristoski")) decided to terminate Anagonye's employment. However, on March 24, 2022, Young was dismissed from the case because she was not Anagonye's "employer." (ECF No. 25).

discrimination and/or retaliation, and that even if she could make such a case, summary judgment is warranted because she failed to raise a material question of fact as to Transform's legitimate, non-discriminatory/non-retaliatory reason for terminating her, and failed to raise a material question of fact that those reasons were pretextual. (ECF No. 59).[2] The motion was fully briefed (ECF Nos. 73, 74, 75[3]), and the Court permitted Anagonye to take certain discovery even after Transform had filed its motion to ensure the record's completeness (ECF No. 71). For the reasons set forth below, Transform's motion should be GRANTED.

## I.    Factual Background

Transform is a full-service metal-forming supplier to automobile original equipment manufacturers. (ECF No. 59-1, Young Decl., ¶ 2). Anagonye began working with Transform on a full-time basis (she had previously been a temporary worker) on June 24, 2019, as an Assembly Associate on an assembly line at its Shelby Township Plant (the "Plant"). (*Id.*, ¶¶ 3-4).

On September 9, 2019, Anagonye wrote a one-page note which read, in its entirety:

> The purpose of this letter is to let Human Resources know about all the workplace bullying I have experience[d]. Under my employment agreement and employee handbook, it states that [Transform] has a 0 tolerance for sexual harassment or any form of bullying. Also, I am protected under federal, state, and civil rights. I will be sending a detailed letter of all the events to HR and request a full investigation with meeting into these matter[s].

---

[2] Pursuant to 28 U.S.C. § 636(b)(1)(B), Transform's summary judgment motion has been referred to the undersigned for a Report and Recommendation. (ECF No. 72).

[3] Anagonye filed a sur-reply without seeking leave of Court, in violation of the Local Rules. (ECF No. 75). However, in light of her *pro se* status, the Court will consider this filing in its analysis.

(ECF No. 59-10) (the "September Complaint").

Anagonye placed the September Complaint on the desk of Natalie Graczyk ("Graczyk"), who was then the Plant's Human Resources Manager. (ECF No. 59-4, Anagonye Dep., p. 173-74). Anagonye admits, however, that at that time, Transform "was going through some changes" and that Graczyk "was never in the office," and "was never present." (*Id.*). Later that same month, Graczyk transferred to a different Transform location, and was replaced by Jill Young. (Young Decl., ¶ 3). Graczyk never responded to Anagonye about the September Complaint, and Anagonye never actually followed up with Graczyk (she claims she tried "several times," but Gracyzk "was never there"). (Anagonye Dep., p. 174). Nor did Anagonye follow up with Young (after she replaced Graczyk), or anyone else regarding the matter. (*Id.*). In fact, when Young took over for Grazcyk, Young met individually with Plant employees, including Anagonye, and Anagonye admits that she did not mention her September Complaint, or make any complaint about harassment or bullying. (*Id.*, p. 179; ECF No. 74-2, Young Dep., p. 12).

On October 22, 2019, Transform Plant employee Syeda Salam, approached Young to lodge a sexual harassment complaint against Anagonye. (Young Decl., ¶ 5). Specifically, Salam reported that Anagonye had been sexually harassing her and other employees in the workplace by making frequent and unwelcome references to her (Anagonye's) boyfriend's genitalia. (*Id.*, ¶¶ 5-6). Young investigated the complaint by speaking with several other Transform employees, who each "corroborated Ms. Salam's statements and recounted additional instances where Ms. Anagonye described her own

3

sexual encounters and showed sexually explicit photos to her co-workers, as well as making stroking motions on machines on the Plant floor." (*Id.*, ¶ 7; *see also* Young Dep., pp. 77-78[4]; ECF No. 59-6, Aaron Slaughter Decl., ¶¶ 5-6 ("Ms. Anagonye also made sexually explicit comments to me while in the workplace. Specifically, Ms. Anagonye told me that she was in a sexual relationship with someone from another shift and described this person performing oral sex on her while recording it on his phone."); ECF No. 59-7,

---

[4] At her deposition, when asked about the other employees' reports regarding Anagonye's conduct, Young testified as follows:

> Several employees, both male and female, talked about some of the inappropriate things that Clare talked about in the workplace. Some of the ladies indicated that she talked about her boyfriend's big dick quite a bit, and wanted to show them pictures while they asked, "Please don't show me pictures of that."
>
> People even from different parts of the plant. She talked about sexual things at work and having sex with her boyfriend. She also talked about having conversations about asking employees about their sex with their husbands or their boyfriends.
>
> And then you -- you asked people if they would like to see a picture of your boyfriend's big dick, and when the female employees said, "No, I don't want to see that," you showed them anyways. It was on your phone. And they were completely -- your -- your boyfriend at the time was completely naked, and people complained about that.
>
> Several of our employees that worked right alongside with you said they don't like working with you because you talked about nasty and vile things. You talked about sex quite often to married men who asked that you not continue to have those conversations because they were very religious and they didn't want to talk about that. You talked about the -- the pole in the plant that you used to pull; you said if you had some lubricant, you could lube this up like your boyfriend's dick. And that it was -- it reminded you of your boyfriend's dick.
>
> And so several of the peoples – people in the plant said they had difficulty working with you. And then in addition to that, there was an employee, a lady who came in who was a temp worker with the -- the temp agency, and she said that at several -- and she -- at this time, she had nothing to gain; she didn't work here anymore, and she indicated that you talked quite often – and she was very uncomfortable with the fact that you talked about your -- your boyfriend's genitalia.

(Young Dep., pp. 77-78).

Ali Safarov Decl., ¶¶ 5-7 (averring that "Anagonye did make sexually suggestive comments in my presence . . . [and] would talk about her own sexual encounters.  Ms. Anagonye also showed me sexually explicit images.  . . . I also personally witnessed Ms. Anagonye showing sexually explicit images to other co-workers."); ECF No. 59-8).  The employees also reported to Young that "Ms. Anagonye was combative, rude, and [] would give her co-worker's [sic] orders despite having no managerial authority." (Young Decl., ¶ 10; *see also* Slaughter Decl., ¶ 4 ("I personally witnessed Ms. Anagonye have confrontations with her co-workers because she would try to boss her co-workers around and lie to them about being part of Transform's leadership when she never was."); ECF No. 59-8, Paul Devito Decl., ¶ 4 ("Ms. Anagonye had numerous issues with her co-workers and could not get along with anyone.")).

As a result of the investigation, Young and the Plant's Interim Production Manager, Ristoski, "made the decision to terminate Ms. Anagonye because of [her] inappropriate conduct . . ." (Young Decl., ¶ 11; ECF No. 59-9, Ristoski Decl., ¶ 10).  Young and Ristoski then met with Anagonye on October 24, 2019, "to explain the decision to terminate her." (Young Decl., ¶ 12; Ristoski Decl., ¶ 11).  At the meeting, Anagonye alleged – for the first time as far as Young and Ristoski were aware – that a co-worker named Kevan Yousif had made inappropriate sexual comments to her (the "October Complaint").  (Young Decl., ¶¶ 12, 15; Ristoski Decl., ¶ 12).  Young "immediately" investigated Anagonye's allegations by interviewing Transform employees, each of whom denied hearing other co-workers

make inappropriate comments to Anagonye.  (Young Decl., ¶ 13; Slaughter Decl. ¶¶ 6-7[5];
Safarov Dec. ¶¶ 10-11).

Despite stating in her September Complaint that she would be "sending a detailed
letter of all the events to HR," Anagonye admits that she did not send such a letter until
November 15, 2019 (the "November Complaint"), which was three full weeks *after* she
was terminated.  (*Id.*, p. 176-77; Young Decl., ¶ 12).  Young avers that "[s]everal months"
after Anagonye's termination, she found Anagonye's September Complaint in a desk
drawer while cleaning out her new office – which had formerly been Gracyzk's office.
(Young Decl., ¶ 15; Young Dep., pp. 12-13).  Neither Young nor Ristoski had seen the
September Complaint before, and since Anagonye had already been terminated, Young
simply placed it in Anagonye's personnel file.  (Young Dep. p. 13, Young Decl., ¶¶ 12, 15;
Ristoski Decl., ¶ 12).

Anagonye filed complaints with the Michigan Department of Civil Rights and the
U.S. Equal Employment Opportunity Commission, obtained a Right to Sue letter, and filed
this lawsuit, alleging that her termination constituted unlawful sex discrimination and
retaliation under Title VII.   (ECF No. 1, PageID.8; ECF No. 73, PageID.596-600).
Transform now moves for summary judgment.  (ECF No. 59).  Having carefully reviewed
the parties' arguments and the record evidence, the Court agrees that summary judgment
in Transform's favor is appropriate.

---

[5] Plant employee Aaron Slaughter testified that he had heard a rumor about Yousif using
inappropriate language at work, but did not know if Yousif actually had done so (ECF No. 74-1,
Slaughter Dep., pp. 27-28).

## II.    Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed,

"'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### III.   Analysis

Anagonye alleges that Transform discriminated against her in terminating her employment on the basis of her sex, and in retaliation for having lodged the September Complaint. The Court will address both claims, in turn.

#### A. Transform is Entitled to Summary Judgment on Anagonye's Sex Discrimination Claim

A plaintiff may prove discrimination through either direct or circumstantial evidence. *See Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009); *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648-49 (6th Cir. 2012). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (quotations omitted). Where, as here, a plaintiff does not purport to have direct evidence of discrimination, but instead is relying on circumstantial evidence, she must proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973).

Under the *McDonnell Douglas* framework, Anagonye must first establish a *prima facie* case of discrimination by showing that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than a similarly situated, non-protected employee.[6] *See Wright v. Murray Guard, Inc*., 455 F.3d 702, 707 (6th Cir. 2006). Then, the burden shifts to Transform to articulate a legitimate, nondiscriminatory reason for Anagonye's termination. *Id*. If Transform does so, to survive summary judgment, Anagonye must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id*. "Although the burdens of production shift, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Davidson v. Allsteel, Inc.*, No. 09-11308, 2011 WL 717524, at *10 (E.D. Mich. Feb. 22, 2011) (quotations omitted).

> ### i. Anagonye Fails to Raise a Material Question of Fact that She was Treated Differently than a Similarly Situated Male Employee for the Same or Similar Conduct

Anagonye cannot meet the fourth element of a *prima facie* case because she cannot identify a "similarly-situated" male employee who was treated differently than she was despite having engaged in the same or similar behavior. In attempting to meet this element

---

[6] Transform states that, for purposes of its instant motion, it will not dispute that Anagonye is a member of a protected class; that she suffered an adverse employment action; and that she was qualified for the position she held prior to her termination. (ECF No. 59, PageID.443).

of her *prima facie* case, Anagonye points to Kevan Yousif, and the fact that he was not terminated even after Anagonye made the October Complaint about him at her termination meeting with Young and Ristoski.  This attempt fails because Yousif's situation is distinguishable from Anagonye's.  When Young investigated the allegations about Anagonye's sexually harassing behavior, multiple employees not only corroborated the allegations, but made additional similar ones against her.  *See supra* at 3-6.  But, Young avers that when she investigated Anagonye's October Complaint allegations about Yousif's sexually harassing behavior, "[a]ll of the employees interviewed denied that Mr. Yousif ever made inappropriate comment[s] [to] Ms. Anagonye."  (Young Decl., ¶ 13). Young's averment is confirmed by the declarations of Anagonye's co-workers (*see* Safarov Decl., ¶ 11; Slaughter Decl., ¶ 6), and Anagonye presented no evidence of any employee confirming her allegation about Yousif to Young.  Because Yousif is not similarly situated to Anagonye, this aspect of her *prima facie* case fails.

Anagonye's other arguments on this issue are of no avail.  Anagonye asserts, "Aaron Slaughter admitted under oath to hearing other[s] speak of Kevan [Yousif] stating Suck my dick, but Jill [Y]oung stated Aaron told her Kevan did not say Suck my dick to anyone." (ECF No. 75, PageID.638).  Anagonye's argument rests on a mischaracterization of the evidence, and careful review of Slaughter's evidence shows that it does not contradict Young's averment.  In his Declaration, Slaughter avers, "I never witnessed any co-worker make sexually explicit remarks to Ms. Anagonye, she was always the aggressor." (Slaughter Decl., ¶ 6).  At deposition, Slaughter merely testified that other "men in the workplace," whose names he does not even know, had told him that they had overheard

Yousif say "something along the lines of, 'suck my dick,'" and reiterated that he himself had never heard Yousif use such language, and therefore did not report it to Young.  (ECF No. 73, PageID.575; ECF No. 74-1, PageID.617-20).  Thus, Slaughter's testimony does not contradict his or Young's declarations, and no question of fact has been raised about the significant differences between the results of the investigations against Anagonye and Yousif.  For all of these reasons, Anagonye fails to meet the fourth element of her *prima facie* claim of gender discrimination.

> ii.   *Transform's Legitimate, Non-Discriminatory Reason for Terminating Anagonye's Employment*

Even if Anagonye could satisfy the fourth element of her *prima facie* case, that would merely shift the burden to Transform to articulate a legitimate, nondiscriminatory reason for terminating her employment.  *See Wright*, 455 F.3d at 707.  Transform meets that burden by presenting unrebutted evidence that Anagonye's co-worker, Syeda Salam, complained to Young about Anagonye making frequent references to her boyfriend's genitalia while at work, that Young investigated that accusation by speaking with numerous of Anagonye's co-workers, and that those co-workers not only corroborated Salam's accusation, but provided detailed additional complaints about Anagonye's sexually harassing and abusive and unprofessional workplace behavior.  *See supra* at 3-6.

While Anagonye may deny her co-workers' allegations, she fails to raise a material question of fact that the co-workers actually made those reports to Young during the course of her investigation, and that Young (and Ristoski) made the decision to terminate Anagonye based on that investigation.  *Id.*  Clearly, the type of sexually harassing and other

abusive conduct Anagonye's co-workers reported is a valid, non-discriminatory basis for terminating an employee.

iii.  *Anagonye Failed to Raise a Genuine Issue of Material Fact that Transform's Proffered Reason for Her Termination was Pretext*

With Transform having met its burden of showing a legitimate, non-discriminatory reason for terminating Anagonye, the burden shifts to Anagonye to show that that reason was pretext.  She may do so by showing that (1) Transform's proffered reasons for her termination had no basis in fact, such as reasons that are "purely concocted and conflict with the facts in the record"; (2) Transform's proffered reasons did not actually motivate her termination, "as when an employer cites a facially valid reason as a mere coverup for its true discriminatory motives"; or (3) that the proffered reasons were insufficient to motivate discharge.  *See Miles v. South Central Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020); *Harris v. City of Akron, Ohio*, 836 F. App'x 415, 420 (6th Cir. 2020). This three-part test need not be applied rigidly, as pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?  *See Miles*, 946 F.3d at 888. *See also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008) ("in determining if the plaintiffs have raised a genuine issue of material fact as to pretext, we should consider not whether [the plaintiffs] *actually* [violated company policy], but rather whether the [employer] had an honestly held belief that they had [done so].") (emphasis in original).  Anagonye fails to raise a material question of fact as to any of the three prongs.

a.  *Proffered Reason was Based in Fact*

To show pretext on the ground that the stated reason for termination had no basis in

fact, a plaintiff "must provide evidence that the employer's allegations never happened." *Miles*, 946 F.3d at 888-89.  In this analysis, "the question is always whether the employer made up its stated reason to conceal intentional discrimination."  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n. 4 (6th Cir. 2009).

Here, Transform's stated reason for terminating Anagonye was that while investigating Salam's allegations of sexual harassment by Anagonye, numerous other co-workers corroborated those allegations and provided additional details of disturbing sexual harassment and other abusive behavior by Anagonye.  While Anagonye denies having engaged in the conduct alleged against her, the only material question is whether she presented evidence that those allegations were not actually made.  *See*, *e.g.*, *Curry v. SBC Commc'n, Inc.*, 669 F.Supp.2d 805, 828 (E.D. Mich. 2009) ("the possibility that witnesses may have lied and the plaintiffs were not actually guilty is of no consequence"); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) ("[plaintiff's] disagreement with the facts uncovered in [employer's] investigation does not create a genuine issue of material fact that would defeat summary judgment 'as long as an employer has an honest belief in its proffered nondiscriminatory reason.'") (citation omitted).  Anagonye failed to meet her burden.  Indeed, the only evidence she presented on this issue – Slaughter's deposition testimony – confirmed the accuracy of his declaration as to what he told Young when she interviewed him as part of her investigation into Salam's complaint about Anagonye.  (ECF No. 73, PageID.575-76, Slaughter Dep., pp. 61-62) (". . . the only thing I told [Young] was what was stated in the declaration.").  Thus, Anagonye cannot succeed under the first *Miles* prong for establishing pretext.

*b. Proffered Reason Motivated Discharge*

"[T]he second type of rebuttal of pretext – that a defendant's proffered reasons did

not actually motivate its action – 'is of an entirely different ilk' than the other types."

*Lawroski v. Nationwide Mut. Ins. Co.*, 570 F. App'x 589, 595 (6th Cir. 2014) (quoting

*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008)).  As the *Lawroski* court

explained:

> Any endeavor to establish this type of rebuttal is based upon an admission of the factual basis underlying the employer's proffered explanation and further [admission] that [those facts] *could* motivate the adverse employment action.  To attempt to indict the credibility of the employer's explanation, the plaintiff normally offers circumstantial evidence that tend[s] to prove that an illegal motivation was *more* likely than that offered by the defendant.

*Id.* (emphasis in original) (quotations and citations omitted).  In other words, to establish

pretext using the second type of rebuttal evidence, Anagonye must concede that she

engaged in the alleged conduct that could have motivated her discharge, but must show

that illegal discrimination was the more likely reason for her termination.

Anagonye fails this prong of the pretext test, as she presents no evidence that

Transform's decision to terminate her was due to anything other than the results of its

investigation of Salam's complaint against her.  Indeed, all of the evidence is to the

contrary.  *See supra* at 3-6.[7]  Moreover, Anagonye's wholly unsupported arguments that

Yousif was treated better than her (*see e.g.*, ECF No. 75, PageID.638) (asserting that "there

was no fair investigation" into Yousif's alleged sexual harassment of Anagonye, and that

---

[7] Below, the Court will discuss in detail why Anagonye fails to raise a material question of fact that unlawful retaliation was the real reason for her termination.  *See infra* at 16-24.

Yousif "was also given favorable treatment in hiring because he was a sponsored immigrant employee . . .") are nothing more than Anagonye's subjective beliefs, which ignore the record evidence regarding Young's investigation of the matter.[8] Such subjective beliefs, however, are insufficient as a matter of law to establish pretext. *See Smith v. City of Toledo, Ohio*, 13 F. 4th 508, 519 (6th Cir. 2021) (conclusory allegations and subjective beliefs are not enough to establish pretext); *Rosenthal v. Faygo Beverages, Inc.*, 701 F. App'x 472, 480 (6th Cir. 2017) (holding that district court "properly concluded that a plaintiff's subjective interpretations or feelings are insufficient to establish pretext").

### c. Proffered Reason Sufficient to Motivate Termination

The third way Anagonye could meet her burden as to pretext is to show that Transform's proffered reason for terminating her was insufficient to motivate that decision. Anagonye fails to raise a material question of fact on this issue.

Young avers that she has been employed by Transform for 25 years as a Human Resource Manager, and had "never had an employee engage in the level of sexually harassing behavior that Ms. Anagonye has." (Young Decl., ¶¶ 3, 9). Multiple employees from across the Plant corroborated the allegations against Anagonye and made other similar allegations against her. Clearly, terminating "an employee in response to

---

[8] Anagonye's attempt to raise a material question of fact about the overall "fairness" of Young's investigation by comparing it to Young's investigation of Anagonye's complaint about Yousif fails. While Young's investigation was perhaps imperfect, it wasn't required to be, *see Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ("we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."), and Anagonye offers no evidence from which the Court could conclude it was "unfair." And, as discussed above, there is no material question of fact that the two investigations yielded very different results. *See supra* at 3-6.

allegations of sexual harassment is [a] legitimate and non-discriminatory" action. *Minnis v. McDonnell Douglas Tech. Servs. Co.*, 162 F.Supp.2d 718, 735 (E.D. Mich. 2001) (citing cases).

For all of the above reasons, Anagonye failed to raise a material question of fact that Transform's proffered reason for terminating her was pretext. Accordingly, summary judgment in Transform's favor on Anagonye's discrimination claim is warranted.

       *B. Transform is Entitled to Summary Judgment on Anagonye's Retaliation Claim*

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must satisfy four elements:

> (1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019) (citations and internal quotations omitted).

Assuming the plaintiff establishes a *prima facie* case of retaliation, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009) (quoting *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Canitia*, 903 F.2d at 1066 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

>    *i.*    *Anagonye Cannot Establish All Elements of a Prima Facie Case*

Transform argues that Anagonye cannot satisfy any of the four *prima facie* case elements. But the Court need not analyze each of the elements because, even assuming Anagonye can show that her September Complaint[9] was a protected activity and that her termination was an adverse action, she has not raised a material question of fact as to the second or fourth elements, that Young or Ristoski had knowledge of the September Complaint before making the decision to terminate her employment, and that there is a causal connection between the September Complaint and the decision to terminate her.

>    *a.  No Knowledge by Young and Ristoski*

As one judge of this Court recently explained in a case similar to Anagonye's:

> An employment decision cannot be considered retaliation for protected activity if the decisionmaker did not know about the alleged protected activity at the time of the adverse action."  *Mulhall v. Ashcroft*, 287 F.3d 543, 552-53 (6th Cir. 2002) (stating that the decisionmaker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation).  The plaintiff must show "that the relevant decision makers knew of any alleged protected activity when they took adverse action[.]"  *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1068-69 (6th Cir. 2015).  However, direct evidence of knowledge by the decisionmaker is not required; "a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element." *Mulhall*, 287 F.3d at 552.  "[K]nowledge can be inferred from evidence of the prior interaction of individuals with

---

[9] The Court agrees with Transform that neither Anagonye's verbal October Complaint about Yousif at the termination meeting with Young and Ristoski, nor Anagonye's written November Complaint, can be protected activity giving rise to a retaliation claim because the undisputed evidence is that both of those complaints were lodged *after* Young and Ristoski made the decision to terminate her employment.  *See supra* at 5.  *See also Blosser v. AK Steel Corp.*, 520 Fed. Appx. 359, 365 (6th Cir. 2013) ("there is no possible way" an email plaintiff sent to the HR manager *after* the decision to terminate him could have caused the employer to make that decision).

such knowledge and those taking the adverse employment action." *Id.* at 553 (citing *Kralowec v. Prince George's Cnty., Maryland*, 503 F. Supp. 985, 1010 (D. Md. 1980), *aff'd*, 679 F.2d 883 (4th Cir.), *cert. denied*, 459 U.S. 872 (1982)) (holding that the knowledge element was satisfied where plaintiff produced evidence that one county official knew of the plaintiff's complaint and that the "prior interaction" of that first official with the second official, who actually fired the plaintiff, made it "highly improbable ... that [the first official] would not have discussed plaintiff's complaint with [the second official] as soon as [the first official] obtained this information."); *see also Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 531 (6th Cir. 1989) (knowledge element satisfied where, after plaintiff visited the Michigan Department of Civil Rights, her supervisor told her, "I know where you've been").

*Bar v. Kalitta Charters II, LLC*, No. 21-CV-11444, 2023 WL 7005829, at *9 (E.D. Mich. Oct. 24, 2023).

In *Bar*, the plaintiff was training with the defendant Kalitta Charters to pilot its planes. In February 2020, during training, a Kalitta employee allegedly simulated a sex act during a training meeting, which plaintiff did not report. During training the next day, the same employee showed plaintiff a pornographic video. Plaintiff left a voicemail with Kalitta's training coordinator, Mr. Coleman, asking for a return call, but providing no other information. Plaintiff then called Kalitta's Chief Pilot, Mr. Gaedtke, and reported the video incident. Gaedtke met with the wrongdoer and admonished him, but took no formal action. Plaintiff completed his training and began flying for Kalitta in April 2020.

Thereafter, plaintiff experienced a few instances of alleged harassment, such as being assigned to an inconvenient hub, being given poor housing accommodations, and being summoned to work when there was no flight to pilot. Plaintiff claimed these events were all in retaliation for reporting the video incident. In June 2020, the plaintiff was co-

piloting a Kalitta plane that veered off the runway.  This led to discipline and required additional training and plaintiff being placed on a remedial program.  Coleman ultimately found plaintiff's progress in the remedial program unsatisfactory and made the decision to fire him on August 21, 2020.  Gaedtke delivered the news to plaintiff.  Plaintiff later sued Kalitta, claiming he was fired in retaliation for making the complaint about the video.

Kalitta moved for summary judgment on the retaliation claim, arguing that because Coleman had testified that prior to making the decision to terminate the plaintiff he was unaware that plaintiff had complained about the pornographic video incident, Coleman's decision to terminate plaintiff could not have been retaliation.  The trial court agreed.  The court found that plaintiff's voicemail to Coleman was immaterial because it simply asked for a return call without lodging a complaint.  The court also found that plaintiff had presented no evidence to rebut Coleman's testimony that at the time he made the decision to terminate plaintiff's employment, he was unaware of plaintiff's complaint to Gaedtke. Consequently, the court granted summary judgment in Kalitta's favor, explaining, "[t]o survive a summary judgment motion, Plaintiff must put forward more than speculations or intuitions, and that is all Plaintiff has here . . .  Plaintiff has failed to produce any evidence to rebut Mr. Coleman's denial of knowledge beyond his speculation and conspiratorial theories."  *Id.*, at *10 (citing *Mulhall*, 287 F.3d at 552 ("holding that plaintiff failed to establish knowledge on the part of the decisionmaker where plaintiff did not produce any evidence, direct or circumstantial, to rebut evidence that the decisionmaker had no knowledge and plaintiff offered 'only conspiratorial theories, not the specific facts required under the Federal Rule of Civil Procedure 56'")).

19

Anagonye's situation is very similar to the *Bar* case.  She admits that she put her September Complaint on Graczyk's desk at a time when she knew Graczyk "was never in the office," and "was never present."  Even assuming Graczyk had actually seen the September Complaint, Anagonye presents no evidence that Graczyk had any involvement in the decision to terminate her employment.  As to Young and Ristoski, the two individuals who made the decision to terminate Anagonye, the evidence is also in Transform's favor. Young unequivocally testified that the first time she saw or knew about Anagonye's September Complaint was months after Anagonye was terminated when Young was cleaning out a desk drawer in her new office, which had been Graczyk's office.  (Young Decl., ¶ 15; Young Dep., pp. 9, 12-13).  Similarly, Young and Ristoski both unequivocally testified that they were unaware of Anagonye's complaints until after they made the decision to terminate her.  (Young Decl., ¶¶ 12, 15 ("During this [termination] meeting, Ms. Anagonye, for the first time, accused Kevan Yousif of making an inappropriate comment about her. . . . Prior to discovery the [September Complaint] . . . I had not seen [it] nor did Ms. Anagonye ever report workplace bulling to me prior to her termination."); Ristoski Decl., ¶ 12 ("I did not know about Ms. Anagonye's allegations of harassment against her co-worker Kevan Yousif until after the decision to terminate Ms. Anagonye's employment was made and had not seen any letters from Ms. Anagonye prior to terminating Ms. Anagonye.")).  Moreover, Young's and Ristoski's testimony is consistent with Anagonye's admissions that when she met with Young after Young took over for Graczyk, Anagonye did not mention the September Complaint or any sexual harassment or bullying, and that she did not follow up on her September Complaint until the

termination meeting.  (Anagonye Dep., pp. 174, 179).

Rather than respond with any evidence contradicting any of the above facts, Anagonye offers only wholly unsupported conclusions and speculation.  For example, she states that Young "admitted to ignoring the multiple letters requesting help against protected civil rights in the workplace."  (ECF No. 73, PageID.562).  But this is simply untrue.  As discussed above, Young unequivocally testified that she did not know about the September Complaint until well after Anagonye was terminated, and that when Anagonye made the October Complaint against Yousif (which was after Young and Ristoski made the decision to terminate Anagonye's employment), she "immediately" investigated the issue.  *See supra* at 5.

Anagonye next asserts that after the September Complaint "was placed on the HR Managers [sic] desk [i.e., Graczyk's desk], instead of her immediately reporting it; she placed it in a drawer.  This was the first act of intent, failure to report the matter immediately and ignore the employer's [sic] request."  (*Id.*, PageID.564).  Not only does Anagonye offer no evidence to support her allegations against Graczyk, but Anagonye admits that, at the time in question, Transform "was going through some changes" and that Graczyk "was never in the office," and "was never present."  (Anagonye Dep., p. 173-74).  (*Id.*).  Anagonye also admits that she never actually followed up with Graczyk, Young, or anyone else regarding the matter.  (Anagonye Dep., p. 174).  Moreover, since Anagonye's vague September Complaint raised no issues beyond those Anagonye raised in her October Complaint (at her termination meeting), there was nothing more for Young to investigate when she found it in her desk drawer months after Anagonye's termination.

In sum, even drawing all reasonable inferences in Anagonye's favor, the only evidence in the record is that when Young and Ristoski made the decision to terminate Anagonye's employment, they were unaware of her September Complaint or any of Anagonye's other complaints. Accordingly, Anagonye cannot meet the second prong of a *prima facie* case of retaliation, which requires her to show that the persons who made the decision to terminate did so with knowledge of her protected activity. *Bar*, 2023 WL 7005829, at *9; *Mulhall*, 287 F.3d at 552-53.

### b.  No Causal Connection

As to the fourth element, in order to demonstrate a causal connection, "the evidence must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001). Anagonye also fails this prong of her *prima facie* case. In addition to the above analysis showing that Young and Ristoski were unaware of Anagonye's September Complaint when they made the decision to terminate her – which thus could not have been a cause of their decision – other undisputed evidence establishes Anagonye's inability to meet the causation element of her *prima facie* case. First, Anagonye continued working for Transform for over a month after she placed the September Complaint on Gracyzk's desk. While that is not a terribly long period of time, nor does the passage of that much time reasonably suggest a connection between the Complaint and the termination decision. Second, and far more important to the analysis, is that it is undisputed that Salam complained to Young about Anagonye on October 22, 2019, that Young conducted an investigation where she interviewed many of Anagonye's co-workers, and they

22

consistently reported sexually harassing and other abusive and unprofessional conduct by Anagonye. The information Young received was so substantial, consistent, and concerning, that it constitutes "'an intervening legitimate reason' to take an adverse employment action[, which] 'dispels an inference of retaliation based on temporal proximity.'" *Suakari v. Akebono Brake Corp.*, 814 Fed. Appx. 108, 113 (6th Cir. 2020) (quoting *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013).

Accordingly, Anagonye cannot meet the fourth prong of a *prima facie* case of retaliation, which requires her to show a "causal connection" between her protected activity and the decision to terminate her.

Because Anagonye fails to raise a material question of fact as to a *prima facie* case of retaliation, Transform is entitled to summary judgment on that claim.

> ii. *Anagonye Did Not Raise a Material Question of Fact that Transform's Reasons for Her Termination were Pretext*

The same burden-shifting framework discussed above with respect to Anagonye's discrimination claim applies to her retaliation claim. That is, if Anagonye had been able to make out a prima *facie case* of retaliation, the burden would have shifted to Transform to show a non-retaliatory reason for making the decision to terminate her, then shifted back to Anagonye to show that Transform's reasons were pretextual. For all of the same reasons discussed above, Transform's reasons for terminating Anagonye's employment were not only non-discriminatory, but also non-retaliatory. Again, Transform presented unrefuted evidence that Salam lodged a sexual harassment complaint about Anagonye, Young investigated the matter, multiple co-workers not only confirmed Salam's allegations, but

made other similar allegations of sexual harassment and abusive conduct by Anagonye, and that Transform's termination decision was based on that investigation.  Those are clearly legitimate reasons for Transform's decision, and Anagonye presented no evidence whatsoever that would suggest Transform's reasons were pretextual, let alone motivated by retaliation for Anagonye's September Complaint.

Accordingly, even if Anagonye could state a *prima facie* case of retaliation, Transform would be entitled to summary judgment in its favor on that claim.  *Canitia*, 903 F.2d at 1066.

### IV.   CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Transform's motion for summary judgment **(ECF No. 59)** be **GRANTED**.

Dated: December 27, 2023                                 s/David R. Grand
Ann Arbor, Michigan                                        DAVID R. GRAND
                                                                     United States Magistrate Judge


### <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections

which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2023.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager